


**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

March 12, 2024

Christopher Markos
Williams Cedar, LLC
One South Broad Street, Suite 1510
Philadelphia, PA 19107
*Counsel for Plaintiff Denny Ramirez*

Mary Anne Groh
Cleary Giacobbe Alfieri Jacobs, LLC
169 Ramapo Valley Road, Suite 105 - UL
Oakland, NJ 07436
*Counsel for Defendant City of Hackensack*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re:** ***Denny Ramirez v. City of Hackensack***
**Civil Action No. 23-3216 (SDW) (ESK)**

Counsel:

Before this Court is Defendant City of Hackensack's ("Defendant" or "the City") motion to dismiss (D.E. 10 ("Motion")) Plaintiff Denny Ramirez's ("Plaintiff") putative class action complaint (D.E. 1 ("Complaint")) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(7). For the reasons stated herein, Defendant's Motion is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**BACKGROUND & PROCEDURAL HISTORY**

For over 30 years, Plaintiff has been employed in the Sanitation Department of the City's Department of Public Works ("DPW"), collecting garbage and recycling materials around Hackensack, New Jersey. (D.E. 1 ¶¶ 4, 24.) Throughout his employment, Plaintiff has been a member of the United Public Service Employees Union (the "Union") (*id.* ¶¶ 4, 5, 7, 27), which acts as "the sole and exclusive representative of all full time, non-seasonal employees of the [DPW]," (D.E. 10-3 at 23).

Since at least 2003, the Union has negotiated and entered into collective bargaining agreements with the City, which, among other things, have governed the relationship between the City and DPW employees, including employees of the Sanitation Department. (D.E. 1 ¶¶ 1, 14,

28–47.) As relevant here, each of the agreements since 2003 has granted the covered employees a right to increased pay for working overtime and on holidays. (*Id.* ¶¶ 28–30, 36–37, 42–43.) Specifically, employees who worked overtime were entitled to pay equal to one-and-a-half times their normal rate of pay, whereas those who worked holidays would receive pay at a rate of two-and-a-half times their normal wage. (*Id.*)

In early 2023, however, Plaintiff learned that he and his coworkers in the Sanitation Department were not receiving full payment for the hours they worked on holidays. (*Id.* ¶¶ 48–52.) Instead of being paid at the holiday pay rate, they received pay at the overtime rate, *i.e.*, one-and-a-half times their normal rate of pay. (*Id.*) Shortly after Plaintiff's realization, the Union filed a grievance on behalf of Plaintiff and his coworkers seeking to recover the extra pay to which they were entitled. (D.E. 10-3 at 59–61.)

In or around June 2023, the Union and the City entered into an agreement to settle the grievance. (*Id.* at 67–68 (the "Settlement Agreement").) Pursuant to the terms of the Settlement Agreement, Plaintiff and his coworkers received $975 in compensation, and in turn, they agreed to waive their rights to pursue any additional claims related to the holiday-pay discrepancies. (*Id.* at 67–68.) More specifically, the Settlement Agreement[1] provided:

> [A]s a condition of receiving payment under this Agreement, each [Union] member accepting compensation thereunder irrevocably waives his or her right to obtain any further compensation with respect to the instant dispute, and neither the [Union] nor any of the employees it represents will seek any additional compensation or any other form of relief in any forum, judicial or otherwise. . . . Any and all claims on behalf of [Union] and all of the employees that it represents at the [DPW], including, without limitation, all Sanitation Department employees, regarding any compensation to be paid on holidays by the City to employees of the [DPW], be and hereby are irrevocably released up to and through the date of this Agreement.

(*Id.*)

Undeterred, Plaintiff filed this action on June 12, 2023, alleging that the City discriminated against him and other Sanitation Department employees—a majority of whom are allegedly members of a protected class—by inadequately and unequally compensating them for the holiday hours they had worked since January 1, 2003. (*See generally* D.E. 1.) Defendant moved to dismiss the Complaint on August 18, 2023, and the parties timely completed briefing. (D.E. 10, 13, 14.)

**<u>STANDARD OF REVIEW</u>**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) by challenging jurisdiction facially or factually. *Const. Party of Pa. v. Aichele*, 757

---

[1] The Settlement Agreement states that it was "entered into as of" June 12, 2023—the same date as the filing of the instant Complaint. (D.E. 10-3 at 67; *see* D.E. 1.) Plaintiff, however, contends that the Settlement Agreement was not "finalized" until a month later. (D.E. 13 at 7.)

F.3d 347, 357–58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Cons. Class Action (Schering Plough)*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke subject matter jurisdiction of the court because, for example, . . . there is no indication of a diversity of citizenship among the parties." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (alterations in original) (quoting *Const. Party of Pa.*, 757 F.3d at 358). In considering a facial attack, a district court employs the familiar standards of Rule 12(b)(6), assuming the veracity of the well-pleaded facts in the complaint and construing them in the light most favorable to the plaintiff. *Const. Part of Pa.*, 757 F.3d at 358 (citing *Schering Plough*, 678 F.3d at 243); *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

Conversely, "a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pa.*, 757 F.3d at 358 (alterations in original) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). When considering a factual attack, a court "may look beyond the pleadings to ascertain the facts." *Id.*

**DISCUSSION**

This Court does not have jurisdiction over Plaintiff's claims because there is no live case or controversy before it, and in any event, Plaintiff has failed to join the Union—a necessary party under Rules 12(b)(7) and 19.

Article III of the United States Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. CONST. art. III, § 2. "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). "Settlement of a plaintiff's claims moots an action." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (citations omitted).

Here, the Union—on behalf of Plaintiff and his coworkers—pursued and resolved a grievance against the City and, in so doing, bound its members to the terms of the Settlement Agreement[2], including provisions that waived and released any additional claims that might arise out of past holiday-pay discrepancies. Plaintiff neither challenges the validity of the Settlement Agreement nor does he allege any wrongdoing on the part of the Union. Accordingly, the unambiguous—and uncontested—waiver and release provisions in the Settlement Agreement preclude the instant claims that similarly arise out of holiday-pay discrepancies. In sum, Plaintiff's claims were waived under the Settlement Agreement, and consequently, there is no case or controversy before this Court.

[2] This was the exclusive means by which Plaintiff and his coworkers could pursue relief for the City's breaches of the collective bargaining agreement. Plaintiff does not contest that. Nor could he. *See Troy v. Rutgers*, 774 A.2d 476, 486 (N.J. 2001) ("Public employees who have selected a representative . . . have no separate negotiating rights. Their collective negotiations representative protects and advances their interests.").

As noted, Plaintiff has not challenged the validity of the Settlement Agreement; indeed, he does not even mention it in his Complaint. To the extent he wishes to contest the terms of that agreement, he must allege that the Union breached its duty of fair representation. *See Saginario v. Att'y Gen.*, 435 A.2d 1134, 1138 (N.J. 1981) (explaining that "[b]ad faith and arbitrariness on the part of the union triggers the breach of the duty of fair representation, which in turn permits the individual to have recourse to the courts"). In that regard, Plaintiff has failed to join a necessary party—the Union.[3]

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Edward S. Kiel, U.S.M.J.
Parties

[3] A court's analysis under Rule 19 proceeds in three steps. *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023). First, the court must consider whether under Rule 19(a)(1)(A) and (a)(1)(B) the absent party should be joined. *Id.* If so, the court must determine whether joinder is "feasible—that is, can the party be joined without depriving the court of the ability to hear the case?" *Id.* Finally, if joinder is not feasible, the court must determine whether the action should "continue in the party's absence or be dismissed." *Id.*

Here, this Court finds that the Union is a necessary party whose joinder is feasible. To be sure, "parties owning rights under disputed contracts . . . generally have a legally protected interest under Rule 19(a)(1)(B)(i)," *id.* at 233, and if, in fact, the Union breached its duty of fair representation, it would certainly call into question the duties and obligations under the Settlement Agreement, *id.* ("[S]ignatories to a contract have an interest in a lawsuit to set aside that contract." (citing *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010)). Therefore, because "any necessary party for whom joinder is feasible *must* be joined," the Union must be joined. *Id.*